**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MILLENNIUM IP, INC. and MILLENNIUM MEDIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No.:  1:17-cv-8201 <br><br> Judge Harry D. Leinenweber <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'** *EX PARTE* **MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs bring this action against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants") for false designation of origin based on infringement (Count I), violation of the Illinois Uniform Deceptive Trade Practices Act (Count II) and Copyright Infringement (Count III). As alleged in the Complaint, defendants are selling unauthorized products that are derivative works of the copyrighted subject matter of the Expendable Films, hereinafter referred to as the "Expendables Products." Also, Defendants are promoting, advertising, marketing, distributing, offering for sale, the illegal Expendables Products using the EXPENDABLES trademark, through various fully interactive commercial Internet websites collectively, the "Defendant Internet Stores"). Defendants' unauthorized conduct is done with the intent to generate profits by infringing and trading off the Plaintiffs'. valuable rights.

1

Defendants create Defendant Internet Stores and design them to appear to be selling authorized Expendables Products while selling unauthorized and unlicensed products to unknowing consumers. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their operation.

Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Indeed, considering the covert nature of offshore infringing activities and the vital need to establish an economic disincentive for infringement, courts regularly issue such orders. *See, e.g., Burberry Limited, et al. v. Su Sheng, et al.*, No. 1:15-cv- 02851 (N.D. Ill. May 27, 2015).

## II. STATEMENT OF FACTS

### A. Plaintiffs' Rights

Plaintiffs, Millennium IP, Inc. and Millennium Media, Inc., through the Millennium Films label and related entities, is one of the longest-running independent film companies in the history of Hollywood, with 20 years and more than 300 movies to its credit. The company now produces, finances and handles international sales for 5-8 star-driven movies per year, generally with budgets between $20 million and $80 million. Plaintiffs are widely known for "The Expendables" series of films which have collectively more than half a billion dollars in worldwide box office sales. *See* Declaration of Trevor Short (the "Short Declaration") at ¶¶ 6-7. Plaintiffs are the owners of the original copyright registrations for the Expendables films. *Id.* at ¶ 9. Also, substantial time, money, and other resources have been expended in developing, advertising, and otherwise promoting the EXPENDABLES trademark. *Id.* at ¶ 11. Thus, the EXPENDABLES trademark is widely recognized and exclusively associated by consumers, the public, and the trade as being associated with Plaintiffs. *Id.*

### B. Defendants' Unlawful Activities

The success of the Expendables Films has resulted in significant infringement of the trademark and copyrights. *Id. at* ¶ 12. Numerous domain names have been identified and linked to fully interactive websites and marketplace listings on platforms which were offering for sale, selling, and importing unauthorized Expendables Products to consumers in this Judicial District and throughout the United States. *Id.* Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government since 2012 annually exceeds $1.2 billion. *Id.* at ¶ 3. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

### III. ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

### A. This Court May Exercise Personal Jurisdiction over Defendants

This Court may properly exercise personal jurisdiction over Defendants since each Defendant has targeted sales from Illinois residents by operating online stores that offer to ship to the United States, including having offered to directly sell infringing Expendables Products to consumers within the State of Illinois. *See* Complaint at ¶¶ 7 and 9. As a result, courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing merchandise

3

to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015); *Chrome Hearts LLC v. P'ships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015).

### B. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

### C. Plaintiffs Will Likely Succeed on the Merits

i. <u>Plaintiffs Will Likely Succeed on Its Claims.</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). A defendant is liable for trademark infringement under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which

4

such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its marks are distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendants' use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).

Regarding the first two elements, the EXPENDABLES trademark is inherently distinctive and has been continuously used for years. As to the likelihood of confusion analysis, the Seventh Circuit, however, has enumerated seven factors to be used: (1) similarity between the marks; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the mark; (6) actual confusion; and, (7) intent of the defendants. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted).

In this case, the likelihood of confusion test is satisfied. Defendants use marks that are identical to the EXPENDABLES trademark on products that are intentionally linked to and intended to trade off the name recognition of Plaintiffs' Expendables Films. In fact, without the films, the accused products would have very little value. For example, without the popularity of the films, the imagery used by the products would be meaningless. As such, the first three likelihood of confusion factors weigh heavily in favor of Plaintiffs.

Regarding the fourth factor, "where the relevant group of consumers is likely to buy in haste or on impulse, confusion is more likely. *TV Land, L.P. v. Viacom International, Inc.*, 908 F. Supp. 543, 552 (N.D. Ill. 1995). Here, the products at issue are not high in price nor do they require much research. The low level of sophistication results in this factor favoring Plaintiffs.

Due to its extensive worldwide exposure, the public, the EXPENDABLES trademark has become famous and associated with Plaintiffs. The trademark is distinctive and signifies to consumers that the accused products are associated with Plaintiffs. Thus, the fifth factor, the strength of the mark, also weighs heavily for Plaintiffs.

As for the sixth factor, evidence of actual confusion is not needed. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion to establish a likelihood of confusion."). Because the accused goods are clearly related to the Expendables Films consumers are likely to think that Defendants' products are sponsored or endorsed by Plaintiffs. This factor weighs for Plaintiffs.

Regarding the seventh and final factor, Defendants are intentionally using the EXPENDABLES trademark to benefit and trade off Plaintiffs' goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiffs' favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiffs, and, therefore, Plaintiffs have proved that it has a reasonable likelihood of success on the merits of its trademark infringement claim.

    ii.  <u>Plaintiffs Are Likely to Succeed on the Copyright Claim</u>

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . .,

or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 597 (8th Cir. 2011).

Here, Plaintiffs own the registered copyrights in the Expendables Films. Short Declaration at ¶ 8. The accused products are derived from the distinctive creative content found in the films such as the films' characters, as shown above. As such, the infringement is clear and establishes that Plaintiffs are likely to succeed on the merits of this claim.

### D. There Is No Adequate Remedy at Law and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).

The harms caused by the copyright infringement of the Expendables Films is equally insidious. The infringements deprive Plaintiffs of the ability to control the creative content protected by the copyright, it devalues the Expendables brand by associating it with inferior quality goods, and it undermines the value of the copyright by creating the impression that infringement may be undertaken with impunity which threatens Plaintiffs' ability to develop further films and markets for the existing films. Short Declaration at ¶¶ 14-22. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs'

have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiffs' ability to enforce its exclusive rights.*"); Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business).

Accordingly, Plaintiffs have established that it will be irreparably harmed by Defendants' infringing conduct.

### E. The Balancing of Harms Tips in Plaintiffs' Favor

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011)

### F. Issuance of the Injunction Is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp*., 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of the Expendables Films extends far beyond protecting the work

8

of the producing studio. It also protects the work of the hundreds of individual contractors that work on a particular film, such as makeup artist and stunt persons. Short Declaration at ¶ 24.

Moreover, courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also for the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). In this case, the injury to the public is significant, and the injunctive relief sought is intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

For these reasons, it is respectfully submitted that granting the Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts of this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Rights Is Appropriate

The requested temporary injunction requires the Defendants to immediately cease all use of the EXPENDABLES trademark or substantially similar marks on or in connection with all Defendant Internet Stores and to cease their acts of copyright infringement. Such relief is necessary to stop the ongoing harm to the trademark and copyrights. The need for *ex parte* relief

9

is magnified in today's global economy where infringers can operate over the Internet in an anonymous fashion.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiffs request an *ex parte* restraint of Defendants' assets to preserve the right to an equitable accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b). If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants, in this case, hold most of their assets in foreign accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiffs meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading*

*Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the Plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). Also, this Court issued asset restraining orders for entire financial accounts in similar cases. *See, e.g., Burberry Limited, et al. v. Su Sheng, et al.*, No. 1:15-cv- 02851 (N.D. Ill. May 27, 2015).

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiffs Are Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, Amazon, and Western Union, which helps to increase their anonymity by interposing a

third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiffs would not know the entities upon whom to serve the order.

Plaintiffs respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiffs' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, the seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)

($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond).

**VI.     CONCLUSION**

The Expendables Film brand is an important part of Plaintiffs' business. That the accused products use the EXPENDABLES trademark and creative content protected by Plaintiffs' copyright is no coincidence. It is validation that consumers value these rights owned by Plaintiffs. Without entry of the requested relief, the sale of infringing products will continue unabated. Therefore, entry of an *ex parte* order is necessary to protect Plaintiffs' rights, to prevent further harm to Plaintiffs and the consuming public, and to preserve the status quo. Given the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiffs intend to present a motion for preliminary injunction.

DATED:  November 13, 2017                                         Respectfully submitted,

                                                                                          /s/ *Keith A. Vogt*
                                                                                          Keith A. Vogt, Esq.
                                                                                          (Bar No. 6207971)
                                                                                          1033 South Blvd., Suite 200
                                                                                          Oak Park, Illinois 60302
                                                                                          Telephone: 708-203-4787
                                                                                          E-mail: keith@vogtip.com

                                                                                          ***ATTORNEY FOR PLAINTIFFS***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on November 13, 2017 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt
